UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

CHERYL A. LEWIS,

        Plaintiff,

       v.

KALEIDA HEALTH,

        Defendant.

20-CV-1860-LJV
DECISION & ORDER

---

On December 16, 2020, the plaintiff, Cheryl A. Lewis, commenced this action, alleging that the defendant, Kaleida Health ("Kaleida"), violated Title VII of the Civil Rights Act of 1964 ("Title VII"); the Age Discrimination in Employment Act of 1967 ("ADEA"); and the Americans with Disabilities Act of 1990 ("ADA").  Docket Item 1.  Kaleida moved to dismiss the complaint, Docket Item 8, and on June 24, 2021, this Court granted the motion to dismiss in part.  Docket Item 14.  Specifically, the Court dismissed Lewis's claims based on discrete discrimination that occurred before January 12, 2019, but gave Lewis leave to amend her other claims to correct the deficiencies noted in the June 24 decision.  *Id.* at 21-22.

On August 23, 2021, Lewis filed an amended complaint.  Docket Item 15.  A month later, Kaleida moved to dismiss the amended complaint.  Docket Item 16.  On October 20, 2021, Lewis responded, Docket Item 19, and two weeks later, Kaleida replied, Docket Item 20.

For the following reasons, Kaleida's motion to dismiss is granted in part and denied in part.[1]

## LEGAL PRINCIPLES

When deciding a motion to dismiss a complaint, the Court "accept[s] all factual allegations as true and draw[s] all reasonable inferences in favor of the plaintiff." *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016) (citing *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 179 (2d Cir. 2014)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

## DISCUSSION

### I.   DISCRIMINATION CLAIMS

As this Court explained in its prior decision, an employment-discrimination plaintiff must plead "enough nonconclusory factual matter to nudge her claim[s] across

---

[1] This Court assumes familiarity with the underlying facts and its prior decision and order, Docket Item 14, and will refer only to the facts necessary to explain its decision.

the line from conceivable to plausible."[2]  *Mandala v. NTT Data, Inc.*, 975 F.3d 202, 208 (2d Cir. 2020) (alterations, citations, and internal quotation marks omitted).  More

---

[2] Rather than respond to the arguments made by Kaleida in support of its motion to dismiss, counsel for Lewis largely responds by rehashing arguments made to—and rejected by—this Court in response to the first motion to dismiss.  *Compare* Docket Item 11 at 2-11 (response to first motion to dismiss), *with* Docket Item 19 at 2-5 (response to second motion to dismiss).  Specifically, counsel argues that by invoking "plausibility," Kaleida—and this Court—are holding Lewis to a heightened pleading standard.  *See, e.g.*, Docket Item 19 at 2 (asserting that this Court "has ignored the plain language of black letter Supreme Court law"), 3 ("Defendant, while ignoring black letter Supreme Court case law which refutes its position, clings zealously to a term offered in a different Supreme Court case; 'plausibility' or its antonym.  This Defendant has gleaned from *Twombly*.").

But "plausibility" is not something that the defendant or this Court created or inappropriately "gleaned from *Twombly*"; rather, the United States Supreme Court imposes the "plausibility" requirement.  *See Iqbal*, 556 U.S. at 678; *supra* at 2 (reciting the motion to dismiss standard as stated in *Iqbal*).  Although "[o]ver a series of a opinions, [the Second Circuit] clarified that *Iqbal* does not require a plaintiff to plead a *prima facie* case," it also has made clear that an employment-discrimination plaintiff must "assert [enough] nonconclusory factual matter . . . to nudge [her] claim[ ] across the line from conceivable to plausible to proceed."  *Mandala v. NTT Data, Inc.*, 975 F.3d 202, 208 (2d Cir. 2020) (citations omitted).  As noted above—and in this Court's prior decision—that requires a plaintiff to plead facts "giv[ing] plausible support to a minimal inference of discriminatory motivation."  *Vega v. Hempstead Union Free School Dist.*, 801 F.3d 72, 84 (2d Cir. 2015) (citation omitted).  Accordingly, although Lewis need not allege "specific facts," she still must allege *something* to plausibly suggest a discriminatory motive.  Contrary to the suggestion in Lewis's response, *see* Docket Item 19 at 2-5, pleading that the plaintiff is a member of a protected class, that she suffered an adverse action, and that because discrimination occurs in the United States it must have occurred here, *see id.* at 4-5, is simply not enough.

This is not the first time counsel has pressed this argument in this case, nor is this the first case in which she has pressed this argument before this Court.  In fact, this Court previously has rejected the same argument in another case, as have other courts in this District.  *See Sayers v. Niagara Falls City Sch. Dist.*, 2022 WL 682640, at *3-4 (W.D.N.Y. Mar. 8, 2022) ("Therefore, even though [the plaintiff] is correct that she need not plead a prima facie case of discrimination as contemplated by *McDonnell Douglas*, she still must give 'plausible support to a minimal inference of discriminatory motive.'" (citing *Vega*, 801 F.3d at 84)); *Mazur v. N.Y. State Dep't of Corr.*, 2021 WL 6774997, at *3 (W.D.N.Y. Jan. 20, 2021) (McCarthy, M.J.) ("Plaintiff does not directly respond to [defendants'] argument but instead argues generally against the imposition of a 'heightened pleading standard' on its ADA and Title VII claims. . . . Plaintiff is correct that . . . he is not required to establish a prima facie case of discrimination at the

3

specifically, to defeat a motion to dismiss a gender-discrimination or disability-discrimination claim, an employment-discrimination plaintiff "need only give plausible support to a minimal inference of discriminatory motivation" behind an adverse employment action.  *Vega v. Hempstead Union Free School Dist.*, 801 F.3d 72, 84 (2d Cir. 2015) (Title VII); *Dooley v. JetBlue Airways Corp.*, 636 F. App'x. 16, 22 (2d Cir. 2015) (summary order) (applying *Vega* to ADA claims); *Littlejohn*, 795 F.3d at 306, 311.  On the other hand, "a plaintiff asserting an employment[-]discrimination complaint [for age discrimination under the ADEA] must plausibly allege that . . . her age was the 'but-for' cause of the adverse action."[3]  *Marcus v. Leviton Mfg. Co.*, 661 F. App'x 29, 31-32 (2d Cir. 2016) (summary order).  But in any discrimination case, the plaintiff must plead a plausible basis for her belief that the defendant discriminated against her.

An inference of discrimination can be drawn from a number of circumstances. *See Littlejohn*, 795 F.3d at 312.  For example, a plaintiff might allege that her employer criticized her performance in terms that are degrading to her protected class.  *See id.*

---

pleading stage.  Nonetheless, he must 'alleg[e] facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination.'" (quoting *Vega*, 801 F.3d at 86)), *report and recommendation adopted*, 2021 WL 1110583 (W.D.N.Y. Mar. 23, 2021) (Sinatra, J.); *Grastorf v. Cmty. Bank, N.A.*, 2020 WL 6777496, at *3 (W.D.N.Y. Nov. 17, 2020) (Skrenty, J.) ("[Plaintiff] either misreads or ignores recent cases from the Second Circuit requiring that a complaint allege some minimal facts to support an inference of discrimination. . . . '[B]its and pieces of information' can suffice, and a Court must take those as true at the motion-to-dismiss stage.  But [plaintiff's] complaint lacks even bits and pieces of information that would suggest that [defendant's] reasons were unlawful."), *reconsideration denied*, 2021 WL 1100686 (W.D.N.Y. Mar. 23, 2021).

[3] For some forms of discrimination—such as discrimination covered by Title VII or the ADA—"the plaintiff's membership in a protected class need only be *a* motivating factor in the adverse employment action taken; for age discrimination claims, however, the age of the plaintiff must be the 'but-for' cause."  *Marcus*, 661 F. App'x at 23, n.1 (emphasis in original).

4

Likewise, the plaintiff might base her claim of discrimination on her employer's "invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge[; or the replacement of] a terminated or demoted employee with an individual outside the employee's protected class." *Id.* at 312-13.

### A. Disability

As relevant here, the ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to . . . discharge of employees." 42 U.S.C. § 12112(a). "A plaintiff asserting an ADA claim must allege and prove four elements: '(1) the defendant is covered by the ADA; (2) [the] plaintiff suffers from or is regarded as suffering from a disability within the meaning of the ADA; (3) [the] plaintiff was qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) [the] plaintiff suffered an adverse employment action because of his disability or perceived disability.'" *Hendrix v. Pactiv LLC*, 488 F. Supp. 3d 43, 51 (W.D.N.Y. 2020) (quoting *Capobianco v. City of New York*, 422 F.3d 47, 56 (2d Cir. 2005)).

The ADA defines "disability" to include (1) "a physical or mental impairment that substantially limits one or more major life activities of [an] individual;" (2) "a record of such an impairment;" or (3) "being regarded as having such an impairment." 42 U.S.C. § 12102(1). "Not every impairment is a 'disability' within the meaning of the ADA; rather, there are two requirements: the impairment must limit a major life activity and the limitation must be substantial." *Capobianco*, 422 F.3d at 56. "[T]he substantial-limitation requirement in the definition of 'disability' is not an exacting one," *Woolf v. Strada*, 949 F.3d 89, 94 (2d Cir. 2020) (citing ADAAA, Pub. L. No. 110–325, § 2(b), 122

5

Stat. 3553, 3554 (2008)), and "[t]he term 'substantially limits' [should] be construed broadly in favor of expansive coverage," 28 C.F.R. § 35.108(d)(1)(i).  To determine whether a major life activity is substantially limited, "courts consider 'the nature and severity of the impairment; its duration or expected duration; and the existence of any actual or expected permanent or long[-]term impact.'"  *Mazzeo v. Mnuchin*, 751 F. App'x 13, 15 (2d Cir. 2018) (summary order) (quoting *Capobianco*, 422 F.3d at 57).

Although the statute expressly recognizes working as a major life activity, 42 U.S.C. § 12102(2)(A), the "inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working."  *Woolf*, 949 F.3d at 94; *see also Mazzeo*, 751 F. App'x at 15.  "Rather, an employee alleging a substantial limitation in the major life activity of working must show that the limitation affects the ability to 'perform a *class . . . or broad range of jobs*.'"  *Woolf*, 949 F.3d at 94 (emphasis in original).  Therefore, when a plaintiff alleges a substantial limitation in working, the complaint must "support[] a plausible inference that [the p]laintiff's [impairment] prevents [her] from performing a broader class of jobs."  *Telemaque v. Marriott Int'l, Inc.*, 2016 WL 406384, at *7 (S.D.N.Y. Feb. 2, 2016).

In its prior decision, this Court found that Lewis had "failed to plead that she has a disability within the meaning of the ADA" and therefore did not raise a viable claim of disability discrimination.  Docket Item 14 at 12.  Specifically, this Court noted that Lewis "does not say—or include any facts from which the Court can infer—that [her chronic migraines and cervicalgia] substantially limit her ability to perform any major life activities."  *Id.* at 10.

6

Lewis again has pleaded that she has "chronic migraines and cervicalgia," Docket Item 15 at ¶ 3,[4] and she now adds a few more factual allegations about her migraines. Specifically, the amended complaint alleges that: (1) "on January 9, 2019," Dr. Laszlo Metchler "treated" Lewis for her migraines and "stated that [Lewis's] chronic migraines could flare up and prevent [Lewis] from performing the functions of her job[] (a major life activity) and that if there were flare ups, she may need to be absent from work as a reasonable accommodation," *id.* at ¶ 40; (2) Lewis visited her neurologist more often during February and March 2019 because "the stress of not taking lunch breaks exacerbated her migraines," *id.* at ¶ 44; (3) Lewis "carried an anti-glare filter screen" with her to use with computers because the computer screens "triggered [Lewis's] migraine headaches" and caused "eye strain and eye fatigue," *id.* at ¶ 43; and (4) when Lewis used the anti-glare screen, a manager once "asked [Lewis] in front of peers, why her computer screen was dark," *id.*

The amended complaint now at least hints at a major life activity that is impacted by Lewis's migraines: working. *See id.* at ¶ 40. Nevertheless, it still does not support a plausible inference that Lewis's ability to work was substantially limited. Although Lewis alleges that Dr. Metchler said that Lewis's "migraines *could* flare up and prevent [her] from performing the functions of *her* job" and that "*if* there [are] flare ups," Lewis "*may*

---

[4] The amended complaint contains multiple sets of duplicative paragraph numbers. After the first nine paragraphs, the paragraph numbers restart at 1. Docket Item 15 at 2. The second set of paragraph numbers stops at paragraph 73 and then restarts at 1. *Id.* at 11. All citations are to the second set of paragraph numbers, which start in the factual background section on page 2 and end in the third cause of action on page 4, except for those specifically designated as "(1)" or "(3)." Those designated as "(1)" refer to the first set of paragraph numbers, and those designated as "(3)" refer to the third set of paragraph numbers.

7

need to be absent from work," *id.* (emphasis added), there are a few problems with relying on those allegations to support an inference of a substantial limitation in Lewis's ability to work.

First, although Dr. Metchler allegedly said that "Lewis's chronic migraines *could* flare up and prevent [her] from" working, *id.* (emphasis added), that says nothing about how often her migraines occurred, whether they actually "flare[d] up," or how often Dr. Metchler thought that might happen.  Likewise, although Dr. Metchler allegedly said that "*if* there were flare ups, [Lewis] *may* need to be absent from work," *id*. (emphasis added), that suggests that there might not be "flare ups" and that even if there were, they might not result in absences.  And while the amended complaint alleges that Lewis had "increased visits" to her neurologist in February and March 2019, *id.* at ¶ 44, it does not suggest that those visits required her to miss work or how much time Lewis took off from work—or might be expected to take off from work—for her migraines.[5]  In other

---

[5] The amended complaint alleges that Dr. Metchler opined that Lewis's migraines might affect her ability to perform "*her* job," see *id.* at ¶ 40 (emphasis added), but that does not address her ability "to 'perform a class . . . or broad range of jobs,'" see *Woolf*, 949 F.3d at 94 (emphasis omitted); *see also Mazzeo*, 751 F. App'x at 15.  As explained above, the "inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." *Woolf*, 949 F.3d at 94.

And even if by that allegation Lewis meant to suggest that she could not perform a job as a nurse practitioner on a broader scale, not just her job at Kaleida, that allegation still would not be enough to survive a motion to dismiss.  A complaint needs to do more than formulaically recite the major life activity limited by her impairment; it needs to give some detail about how the "alleged disability substantially and actually affected any major life activity." *Philbert v. City of New York*, 2022 WL 94574, at *16 (S.D.N.Y. Jan. 7, 2022) (citation omitted); *see Zuckerman v. GW Acquisition LLC*, 2021 WL 4267815, at *11 (S.D.N.Y. Sept. 20, 2021) (dismissing ADA claim and noting how the formulaic claims lacked factual allegations keyed to plaintiff); *cf. Philbert*, 2022 WL 94574, at *16  (holding that plaintiff "narrowly" pleaded disability because "although the [complaint] [spoke] in general terms and lack[ed] important details about the effect on [plaintiff's] major life activities . . . it contain[ed] a key allegation: that [plaintiff's]

8

words, Lewis alleges next to nothing about how or how often her migraines affected her ability to work and asks this Court to speculate about how often the migraines required—or might require—Lewis to miss work.

Even broadly construing Lewis's allegations "in favor of expansive coverage," 28 C.F.R. § 35.108(d)(1)(i), those allegations are not enough.  She gives this Court nothing from which to infer "the nature and severity of the impairment; its duration or expected duration; and the existence of any actual or expected permanent or long[-]term impact," *Mazzeo*, 751 F. App'x at 15, and she therefore has not pleaded that she has a disability within the meaning of the ADA.[6]

For all those reasons, even with the new allegations in the amended complaint, Lewis still has failed to state a claim for disability discrimination.

---

migraines were severe enough that she had surgery to treat them, with the surgery being substantial enough to require substantial time away from work during recovery").

[6] As explained in this Court's prior decision, "Lewis's 'failure to plausibly allege a substantial limitation to a major life activity . . . precludes her from asserting that she has a record of disability.'"  *See* Docket Item 14 at 11 (quoting *Kelly v. New York State Office of Mental Health*, 200 F. Supp. 3d 378, 394 (E.D.N.Y. Aug. 9, 2015)).

Moreover, the amended complaint does not allege that Kaleida "regarded [Lewis] as having" a disability, *see* 42 U.S.C. § 12102(1).  And even if that was an oversight, the factual allegations of the amended complaint fail to suggest that Lewis was "regarded as having" a disability for all the reasons stated in this Court's prior decision.  *See* Docket Item 14 at 11-12.  To the extent Lewis argues that her manager's question about Lewis's dark computer screen suggests that Lewis was regarded as having a disability, that asks too much of a simple question.  In fact, the amended complaint itself does not make such an inferential leap.  Rather, it says that Lewis's manager's question about the screen "impl[ied] that [Lewis] was not utilizing her computer properly."  Docket Item 8 at ¶ 43.

**B.     Age**

"To survive a Rule 12(b)(6) motion to dismiss, a plaintiff asserting an employment discrimination [claim] under the ADEA must plausibly allege that adverse action was taken against her by her employer, and that her age was the 'but-for' cause of the adverse action."  *Marcus*, 661 F. App'x at 31-32 (citing *Vega*, 801 F.3d at 87).

In its prior decision, this Court found that Lewis "failed to 'plausibly allege that . . . her age was the "but-for" cause of'" any adverse action.[7]  Docket Item 14 at 14 (citing *Marcus*, 661 F. App'x at 31-32).  And it explained how Lewis's "'seniority is not a sufficiently accurate indicator of age' that, by itself, can support an inference that adverse actions based on seniority necessarily evidence age discrimination."  *Id.* (quoting *Cross v. New York City Transit Auth.*, 417 F.3d 241, 250 (2d Cir. 2005)).

The amended complaint again suggests that it was Lewis's seniority that triggered the other nurse practitioners' resentment towards Lewis.  *See, e.g.*, Docket Item 15 at ¶¶ 61 ("[Lewis] was badgered and harassed about what vacation time she was going to take in the summer and at Christmas[] because she had seniority over the younger [nurse practitioners]."), 64 ("[Lewis] was treated in a dismissive manner by

---

[7] In its prior order, this Court also dismissed Lewis's claims based on discrete acts of discrimination that occurred before January 12, 2019, because those claims are time barred.  Docket Item 14 at 13-14, 21.  The amended complaint continues to allege several acts that took place before January 12, 2019, or are undated.  *See* Docket Item 15 at ¶¶ 10-17, 20-21, 32-34.  To the extent that Lewis continues to claim discrimination based on those allegations, those claims are dismissed because they are time barred.  The Court still will consider those allegations, however, to the extent that those "prior acts" serve "as background evidence in support of a timely claim."  *Wolf v. Time Warner, Inc.*, 2011 WL 856264, at *5 (S.D.N.Y. Mar. 3, 2011) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002)).

10

other professionals in her department" because "she had the first right to vacation time and daily assignments."). But it also adds one key allegation: Kaleida laid off Lewis, age 60-61, but two younger nurse practitioners, ages 30-31 and 44-45, retained their jobs. *See* Docket Item 15 at ¶ 58. That is sufficient to give rise to a minimal inference that Kaleida laid Lewis off because of her age.

Kaleida argues that the retention of the two younger nurses does not give rise to a minimal inference of age discrimination because Lewis does not "also allege that they replaced her." Docket Item 16-4 at 18. In a reduction-in-force case, however, an employee who was laid-off "is not required to establish that she was *replaced* by . . . a younger employee." *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 503 (2d Cir. 2009) (emphasis added). Instead, "a variety of circumstances can give rise to an inference of discrimination," *id.*, including that during a reduction in force, "the employer has located new positions for younger, but not older, employees," *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 204 (2d Cir. 1995) (collecting cases).

Lewis alleges that two nurses who were thirty and sixteen years younger than Lewis retained their jobs when she was laid-off. Docket Item 15 at ¶ 58. Although those allegations may be thin, they narrowly give "plausible support to a minimal inference" of age discrimination, and Lewis's age discrimination claim therefore survives the motion to dismiss.[8] *See Marcus*, 661 F. App'x at 32; *see also Wolf*, 2011 WL

---

[8] Kaleida also argues that "even if [Lewis] had alleged she was replaced by a younger employee, no inference of discrimination could plausibly be drawn from such a cursory allegation." Docket Item 16-4 at 18. (citing *Cocca-Rau v. Standard Ins. Co.*, 2020 WL 4207442, at *8 (S.D.N.Y. July 22, 2020)). Although the mere fact that a "younger" individual replaced a plaintiff cannot sustain an age discrimination claim, *see Cocca-Rau*, 2022 WL 4207442, at *8, the amended complaint now offers more than "such a cursory allegation"; it identifies two nurses who were not laid off and provides

11

856264, at *6 ("While the allegations here are not as strong as the evidence the Second Circuit found sufficient in *Leibowitz*, the standard on a motion to dismiss is much lower, and [p]laintiff's allegations are enough to clear this fairly low bar.").

### C.    Gender

"To support a minimal inference of discrimination, a plaintiff may allege disparate treatment by showing 'the more favorable treatment of employees not in the protected group,' who are 'similarly situated in all material respects.'" *Carris v. First Student, Inc.*, 682 F. App'x 30, 32 (2d Cir. 2017) (summary order) (first quoting *Littlejohn*, 795 F.3d at 312; and then quoting *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 230 (2d Cir. 2014)). Generally, an employee is similarly situated to a proposed comparator if the two "were (1) 'subject to the same performance evaluation and discipline standards' and (2) 'engaged in comparable conduct.'" *Stinnett v. Delta Air Lines, Inc.*, 278 F. Supp. 3d 599, 611 (E.D.N.Y. 2017) (citations omitted); *see also Graham v. Long Island R.R.*, 230 F.3d 34, 39-40 (2d Cir. 2000). "While the law does not require detailed pleadings regarding the similarly situated comparators, the plaintiff must at least plead allegations from which it is plausible to conclude that the comparators are similarly situated." *Wolfinger v. Consol. Edison Co. of N.Y, Inc.*, 2018 WL 3637964, at *9 (E.D.N.Y. July 31, 2018) (internal citations and quotation marks omitted).

This Court previously found that the complaint failed to raise a viable gender-discrimination claim because it failed to link any of the "alleged discriminatory behavior

---

their ages. *See Wolf*, 2011 WL 856264, at *6 (allegation that two employees under the age of forty took over plaintiff's work gave rise to a plausible inference of age discrimination).

. . . to Lewis's gender." Docket Item 14 at 16.  What is more, the Court found that Lewis's allegation of "disparate treatment regarding attendance" compared to "John Hawk," a male co-worker who left "early during his shift and affect[ed] other's [sic] work," failed to raise a gender-discrimination claim because "Lewis d[id] not allege that she was similarly situated to Hawk—for example, that she tried to leave work early but was prevented from doing so or was reprimanded in some way."  *Id.* at 15-16 (citing Docket Item 1 at ¶ 25).

The amended complaint once again alleges that Lewis was treated differently than Hawk.  *See* Docket Item 15 at ¶¶ 25, 1(3)-6(3).  And it now includes some allegations that Hawk and Lewis were similarly situated.  For example, the amended complaint alleges that Hawk also was also a nurse practitioner "with the same title and same position as" Lewis.  *Id.* at ¶ 2(3).

But Lewis still has not alleged that she and Hawk behaved in a similar fashion and that she was penalized but Hawk was not.  For example, Lewis still has not alleged that "she tried to leave work early [as Hawk did] but was prevented from doing so or was reprimanded in some way."  *See* Docket Item 14 at 15-16.  Likewise, while she alleges that Hawk brought "specialized beer" to a physician "against workplace policies," she does not allege that she did something similar but was punished for it.  *See* Docket Item 15 at ¶ 5(3).  In other words, Lewis does not allege that she and Hawk "engaged in comparable conduct" and that she was treated differently.  *See Stinnett*, 278 F. Supp. 3d at 611.

For that reason, the amended complaint still fails to state a claim for gender discrimination.

## II.  HOSTILE WORK ENVIRONMENT CLAIM

Under the ADEA, "an employee seeking to bring a hostile work environment claim must show [1] that she . . . is a member of a protected class; [2] that she suffered unwelcomed harassment; [3] that she was harassed because of her membership in a protected class; and [4] that the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive work environment." *Monterroso v. Sullivan & Cromwell, LLP*, 591 F. Supp. 2d 567, 584 (S.D.N.Y. 2008); *see Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003).

Lewis alleges that she was subjected to a "hostile work environment based on [her] age." Docket Item 15 at 10 (capitalization omitted). In its prior decision, this Court found that "there is no question that Lewis 'subjectively perceive[d her] environment [at Kaleida] to be abusive.'" Docket Item 14 at 18 (citing *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002)). Nevertheless, this Court held that Lewis's hostile work environment claim under the ADEA was subject to dismissal because she failed to "tie[] any of Kaleida's conduct to her age." *Id.* Although, as explained above, the amended complaint narrowly ties Lewis's layoff to her age and her age discrimination claim therefore survives the present motion to dismiss, the amended complaint falls short in tying any alleged hostile work environment to Lewis's age.

As in the complaint, Lewis's allegations in the amended complaint regarding any alleged "hostile work environment" cite her seniority, not her age. *See* Docket Item 15 at 10-11 (capitalization omitted). Like the complaint, the amended complaint suggests that Lewis's younger co-workers resented Lewis not for her age, but because Lewis's greater seniority entitled her to "the first right to vacation time and daily assignments."

*See id.* at ¶ 64.  And it says that Lewis's co-workers treated her poorly for that reason, not because of her age.

As this Court explained in its prior decision, seniority "'is not a sufficiently accurate indicator of age' alone to plead an age-discrimination claim."  Docket Item 14 at 19 (citing *Cross*, 417 F.3d at 250).  That is so because seniority "depend[s] upon the age at which the employee began to work for the company" and thus "employees with greater seniority are not necessarily older than employees with less."  *Ludovicy v. Dunkirk Radiator Corp.*, 922 F.2d 109, 111 (2d Cir. 1990).  And although Lewis has pleaded more than seniority with respect to her claim that she was laid off because of her age, she has not done the same with her hostile work environment claim.

The amended complaint therefore fails to state a claim for hostile work environment based on age.[9]

## III.    RETALIATION CLAIMS

To survive a motion to dismiss, a plaintiff asserting a retaliation claim under Title VII or the ADA "must plausibly allege that: (1) [the] defendants discriminated—or took an adverse employment action—against [her], (2) 'because' [s]he has opposed any unlawful employment practice."  *Vega*, 801 F.3d at 90.  A plaintiff may state a *prima facie* case of retaliation under Title VII or the ADA by "establish[ing] that (1) the employee was engaged in an activity protected by the ADA [or Title VII], (2) the employer was aware of that activity, (3) an employment action adverse to the plaintiff occurred, and (4) there existed a causal connection between the protected activity and

---

[9] The amended complaint does not allege—or, broadly read, even suggest—that Lewis was subject to a hostile work environment based on gender or disability.

15

the adverse employment action."  *Sarno v. Doublas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 159 (2d Cir. 1999); *Terry*, 336 F.3d at 141.

"'Protected activity' includes oppos[ing] a discriminatory employment practice," *Hubbard v. Total Commc'ns., Inc.*, 347 F. App'x 679, 680-81 (2d Cir. 2009) (summary order), and reaches even "informal protests of discriminatory employment practices, [such as] making complaints to management," *Belton v. Borg & Ide Imaging, P.C.*, 2021 WL 98392, at *7 (W.D.N.Y. Jan. 12, 2021) (citation omitted).  "But such [informal] complaints must be 'sufficiently specific so that the employer is put on notice that the plaintiff believes she is being discriminated against on *the basis of* a protected characteristic.'"  *Id.* (internal marks omitted) (emphasis added) (citing *Jaeger v. North Babylon Union Free Sch. Dist.*, 191 F. Supp. 3d 215, 232 (E.D.N.Y. 2016)).  In other words, "[g]eneralized complaints" are insufficient.  *McCullough v. John T. Mather Hospital of Port Jefferson, New York, Inc.*, 2019 WL 1755436, at *8 (Apr. 19, 2019).  "To the extent that an employee complains about perceived 'unfair' treatment relating to job responsibility, hiring practices, or corporate policy, but fails to link the treatment to unlawful discrimination or to h[er] protected status, [s]he fails to establish that [s]he was engaged in [a] protected activity."  *Id.* (citation omitted).

The amended complaint alleges that Lewis complained to her manager about inadequate training, about the lack of lunch breaks, about her co-workers' violations of work rules, and generally about the "discriminatory hostile environment she was being subjected to."  *See* Docket Item 15 at ¶¶ 6, 16, 18, 21, 25, 29, 66.  But the amended complaint does not allege that Lewis complained that she was "being discriminated against on the basis of" her gender or disability or age.  *See Belton*, 2021 WL 98392, at

*7 (complaints must put employer "on notice that the plaintiff believes she is being discriminated against on *the basis of* a protected characteristic" (emphasis added)).  In other words, although Lewis alleges that she complained to management generally about "perceived 'unfair' treatment" and workplace violations, her alleged complaints did not "link the [perceived unfair] treatment" to any protected status.  *See McCullough*, 2019 WL 1755436, at *8.

Moreover, to the extent that Lewis argues that her FMLA leave request is a protected activity, *see* Docket Item 15 at ¶ 51, she is mistaken.  "A request for FMLA leave, without more, cannot constitute a protected activity for the purposes of an ADA retaliation claim." *Brizzi v. Utica Mut. Ins. Co.*, 529 F. Supp. 3d 44, 56 (E.D.N.Y. 2021) (quoting *Kastrati v. Progress of Peoples Mgmt. Corp.*, 2020 WL 6940991, at *5 (E.D.N.Y. Nov. 24, 2020)).  As just explained, Lewis does not provide anything more, and her FMLA request therefore does not constitute a protected activity for her ADA retaliation claim.

Because Lewis has failed to plead that she engaged in a protected activity, she has failed to state a retaliation claim under either the ADA or Title VII.

## **CONCLUSION**

For the reasons stated above, Kaleida's motion to dismiss, Docket Item 16, is GRANTED IN PART and DENIED IN PART.  Lewis's discrimination and retaliation claims under the ADA and Title VII are dismissed as is her hostile work environment claim under the ADEA.  Her age discrimination claim based on her layoff, however, may proceed.

SO ORDERED.

Dated:   September 27, 2022
         Buffalo, New York


                                            _/s/ Lawrence J. Vilardo_____
                                            LAWRENCE J. VILARDO
                                            UNITED STATES DISTRICT JUDGE